## William J. Moore and Albert Learnard v. A. A. Partlow.

1. INTERPLEADER—*Where the Bill Lies.*—A bill of interpleader lies when two or more persons claim the same fund or property by different or separate interests, and the custodian does not know to whom, of right, it belongs, and between whom he is wholly indifferent.

2. SAME—*By Master in Chancery in a Partition Proceeding.*—Where a master in chancery has the custody of a fund merely for the purpose of distributing it under a decree in partition, and sustaining no such relation to the distributees as requires him to see that none of them are imposed upon in the disposition of their interests, a bill of interpleader will not lie by him for the purpose of determining the rights of persons claiming to be assignees of a distributee.

**Bill of Interpleader.**—Trial in the Circuit Court of Vermilion County; the Hon. FERDINAND BOOKWALTER, Judge, presiding. Decree for complainant; appeal by defendants. Heard in this court at the May term, 1899. Reversed and remanded, with directions. Opinion filed September 20, 1899.

SALMANS & DRAPER, attorneys for appellants.

One who can, by ordinary diligence, inform himself, etc.,

or in any way avoid the double claim, can not maintain interpleader. All the parties must claim of him the same debt or duty, adversely to each other. Sulzbacker v. Bank, 52 N. Y. Super. Ct. 269; McDonald v. Allen, 37 Wis. 108.

All the parties against whom he seeks relief must claim of him the same thing, debt or duty. Turner v. Kendall, 3 M. & W. 171; Hays v. Johnson, 4 Ala. 267; Adams v. Dixon, 19 Ga. 513; Rohrer v. Turrill, 4 Minn. 407; Yarborough v. Thompson, 3 S. & M. 291; Tpke. Co. v. Ferree, 17 N. J. Eq. 117; Atkinson v. Manks, 1 Cow. (N. Y.) 691; Banks v. Wilkinson, 4 R. I. 507.

Interpleader will not be allowed where it does not appear that there is a reasonable doubt as to which claimant is entitled to the money, etc. McCullough v. Ins. Co., 2 Pa. Dist. 261.

A fatal objection to interpleader will be that the plaintiff shows no right to compel the defendants to interplead, whatever rights they may claim. Story's Eq. Pld., Sec. 292.

OLIVER M. JONES, attorney for appellee.

Complainant in a bill of interpleader is not bound to know the facts on which defendant's title rests; it is sufficient for him to show his danger, his indifference to each claimant, his readiness to pay the one entitled, and ask for relief. Supreme Lodge v. Raddatz, 57 Ill. App. 119.

As to cases where a bill of interpleader will lie, see Newhall v. Kastens, 70 Ill. 156; Platte v. Valley Bank v. National Bank, 155 Ill. 250; National Live Stock Bank v. Platte Val. State Bank, 54 Ill. App. 483; Supreme Lodge v. Raddatz, 57 Ill. App. 119; Curtis v. Williams, 35 Ill. App. 518.

Where there is a reasonable doubt as to which of the parties is entitled to the fund, a bill of interpleader will lie. Crain v. McDonald, 118 N. Y. 648.

**Statement.**—On September 10, 1898, the appellee as master in chancery of Vermilion county, Illinois, filed in the

Circuit Court of that county, a bill of interpleader against the
appellants and another, John Montgomery, in which appellee
states that at the May term, 1898, of that court, in the case
of Jennie Phillips v. Samuel Le Neve et al., a partition pro-
ceeding, he, as such master in chancery, was ordered by the
decree of the court, to make sale of the real estate described
in said proceeding; that on July 9, 1898, he sold a portion
thereof for the sum of $11,475; and on August 6, 1898, he
sold the balance for $2,600; that by that decree he was
further ordered to pay to John Montgomery the one-
twentieth of such proceeds after deducting costs; that after
the sale of July 9th, and prior to that of August 6th, John
Montgomery sold and assigned to William J. Moore and
Albert Learnard, by a pretended written assignment and
power of attorney, all his (Montgomery's) interest in the
proceeds of the sale made July 9th; that the costs of the
partition proceeding amounted to some $600, but has not
been apportioned as between the first and second sale; that
John Montgomery is a man weak of body and mind, and as
appellee has been informed and believes, he is incapable of
taking care of his property, or of transacting ordinary busi-
ness; that Moore and Learnard have demanded of appellee,
under the said assignment, all the interest of Montgom-
ery in the proceeds of the sale made August 6th; and that
all three of them have threatened appellees that if he "did
not pay them their respective shares of money from the
proceeds of said sale, they would bring suit against him on
his official bond as such master in chancery; that the order
of the court in the partition proceeding directs him to pay
all of the one-twentieth of said proceeds to Montgomery,
and as he transferred a portion thereof to Moore and Learn-
ard, it leaves the amount due each uncertain; and by reason
of the mental and physical condition of Montgomery, ap-
pellee is unable to determine to whom Montgomery's one-
twentieth of the proceeds should be paid.

Appellee further states in his bill that he is, and always
has been, willing and ready to pay said money to such per-
son or persons as are lawfully entitled thereto, and hereby

offers to bring the same into court to be distributed as the court shall direct; that appellee does not collude with either said Montgomery, Moore or Learnard, touching the matters in controversy in this cause, nor is he in any manner indemnified by them, or either of them, nor does he exhibit this bill at the request of either of them, but of his own free will, and to avoid being molested, vexed and harassed touching the matters herein contained.

The bill makes Montgomery, Moore and Learnard, defendants, and prays that they interplead, settle and adjust their said differences and claims to said money, and the court determine to whom appellee shall pay the same. The bill also prays that Montgomery, Moore and Learnard, their attorneys and agents, be enjoined from proceeding against appellee in any action at law for said money and for general relief.

The bill was sworn to by appellee, and by order of the Hon. F. Bookwalter, a judge of the Fifth Circuit, the clerk of the Circuit Court of Vermilion County, on September 10, 1898, issued a temporary injunction as prayed for in the bill, which was served on the defendants the same day it was issued.

On the first day of the October term, 1898, of the said Circuit Court, a guardian *ad litem* was appointed for the defendant, John Montgomery, and by leave of court then given, appellee filed, two days thereafter, his supplemental bill in which he states that upon his petition in the said case of Phillips v. Le Neve et al., the Circuit Court of Vermilion County had ordered him to hold in his possession the money now in controversy in his bill of interpleader, until the further order of court.

Montgomery, Moore and Learnard each answered the bill of interpleader and supplemental bill, in which they admit that the appellee is master in chancery as alleged, and as such he made the sales of the real estate and realized the sums of money therefor; and that Montgomery had one-twentieth interest therein, less the costs, as stated; and set up that Montgomery, in consideration of $475 paid him by

Moore and Learnard, sold to them his interest in the proceeds of the first sale, but deny that Montgomery is weak minded, averring that he is now, and always has been, capable of transacting properly his business, and insist that Moore and Learnard own and are entitled to one-twentieth of the proceeds of the first sale, less the costs, as purchasers from Montgomery; that Montgomery is entitled to the one-twentieth of the proceeds of the second sale, less the costs; and they deny that there is any contention or dispute between Montgomery, Moore and Learnard as to what part of said proceeds each is entitled.

The guardian *ad litem* of Montgomery filed an answer for him in which he states that Montgomery is unacquainted with the matters and facts set forth, and is mentally unable to give consent to, or admit any of the same, and prays for strict proof, etc.

The appellee filed his replication to the answers, and the cause was referred to Isaac A. Love, Esq., as special master, to take the evidence in short-hand, so either party, if desired, could have it written up, and report his conclusions of law and fact. The special master took the evidence in short-hand, and made report as follows :

## " FINDINGS OF FACT.

" First. That at the time of the beginning of this action A. A. Partlow, as master in chancery, had in his hands the sum of $672.52, the property of John Montgomery, one of the defendants herein.

Second. That the said sum of money came into the hands of said master on the 28th day of July, 1898, being the one-twentieth of the proceeds of a sale of real estate on the 9th day of July, 1898, amounting to $11,475.00, and of a sale of real estate on the 6th day of August, 1898, amounting to $2,600.00, less a like share of the costs in the case of Philips et al. v. Le Neve et al., No. 6389, in the Circuit Court of this county, and that the said John Montgomery was entitled to said one-twentieth part thereof, less the same share of the costs of said case; that his share of the costs is the sum of $31.23.

Third. That shortly before the said money came into the hands of the said master, and long before the bill of inter-

pleader was filed herein, to wit, on the 16th day of July, 1898, the said John Montgomery received from his co-defendants, W. J. Moore and Albert Learnard, the sum of $475.00, in consideration of which the said John Montgomery affixed his name to a certain instrument in writing, whereby he undertook to assign, sell, transfer, allot and set over to said W. J. Moore and Albert Learnard all his interest in the proceeds of the first sale of real estate, out of which said funds arose, amounting to about $550.00, and whereby he undertook to make, constitute and appoint William J. Moore his attorney in fact, to appear before the master in chancery and receive from him, the said master in chancery, the said money now in his hands, and the balance yet to come into his hands, from said sale, which power of attorney and assignment of interest was acknowledged before a notary public.

Fifth. That said Albert Learnard had purchased the said real estate sold on the 9th day of July, 1898, but did not pay the purchase price over to the master until July 28, 1898, because of delay in getting his money, and that before the said power of attorney and assignment of interest was made, the said W. J. Moore asked the said Albert Learnard how long it would be before he would pay the price of said real estate to the master, and that said Learnard said it would be four or five days; that thereupon the said Moore said he thought he could make a little money, and invited the said Learnard to go in with him. He, Moore, said that John Montgomery wanted to sell his interest, but that he could not quite handle it; that the said Learnard and Moore thereupon agreed to purchase the same, which they did in a day or so, as above stated.

Sixth. That immediately after the receipt of the said money from the said master, the said W. J. Moore demanded the same, to the amount of $550, from the said master, and that said master refused to deliver the same to the said Moore, because there had been no apportionment of the costs in the two sales, and because he had received notice from said Albert Learnard and Joe Phillips that the said John Montgomery was a spendthrift and not capable of managing and caring for his property.

Seventh. That afterwards the said Montgomery, Albert Learnard and W. J. Moore, with their attorney, G. W. Salmans, appeared before said master, and demanded the proceeds of said sales, or offered to receipt for the proceeds of both sales, less costs to the extent of John Montgomery's interest therein; they also, at said time, consented that any

or all of the interest of said John Montgomery be paid to either of the defendants, or to all of them, and offered to execute receipts, by each of them, to the master for whatsoever was paid; the said defendants also offered to make, execute and deliver a good and sufficient bond to the said master to secure him harmless by reason of any payment he made of such money to the defendants; that after such offer, and each of them, the said master refused to pay the said money, or any part thereof, to either of, any, or all of the defendants.

Eighth. That the said master in chancery after such refusal requested the defendants to present a petition to the court for an order on him to pay over the said money to the defendants; that the said defendants, by one of their attorneys, Fred. Draper, did prepare such petition, but by the advice of G. W. Salmans, another attorney for the defendants, they failed and refused to present such petitions to the court, and the said defendants threatened to sue the said A. A. Partlow, as such master, together with his bondsmen, in the County Court of this county, and made such threats shortly before the bill of interpleader was filed herein.

Ninth. That said A. A. Partlow, as such master, at the time he refused to make payment of the aforesaid, and when the said power of attorney and assignment of interest was made, believed that the said Montgomery was incapable of managing and caring for his own estate, and that at the time he filed his bill of interpleader in this case, he believed that the said defendants were about to sue him and his bondsmen in the County Court, and put him and his bondsmen to trouble and expense; that the said A. A. Partlow, as master in chancery, had no interest in the retention of said funds, the property of said John Montgomery, and only refused to pay it over in order to properly be protected in the same.

Tenth. That the said John Montgomery, at the time of the execution of the power of attorney to W. J. Moore, and the assignment of interest in said sale included therein, and for a long time prior thereto was and had been a person who, by reason of unsoundness of mind, is incapable of managing and caring for his estate.

Eleventh. That said W. J. Moore and Albert Learnard, at the time that they attempted to purchase the interest of the said John Montgomery in the first sale, knew that he was a person incapable of managing and caring for his own estate, the said Albert Learnard having known him for

-more than twenty years and being by marriage related to him; and the said W. J. Moore having treated the said Montgomery as a physician, and because of the discount obtained in said purchase of $75 on $550 for twelve days.

Twelfth. That the said $475, so received by the said John Montgomery from the said W. J. Moore and Albert Learnard, has been wasted and squandered by said Montgomery.

### CONCLUSIONS OF LAW.

First. That said A. A. Partlow, master, etc., had a right to file a bill of interpleader herein.

Second. That the said master was justified in refusing to pay over the said interest of the said Montgomery in said estate, as represented by the money in his hands, to the said Montgomery, because of his incompetency to care for and manage his own estate.

Third. That the said master was justified in refusing to pay said interest of said Montgomery in said estate, or any part thereof, to W. J. Moore or Albert Learnard, because the said Montgomery was not competent to execute the said power of attorney and assignment of interest, and because no rights passed thereby.

Fourth. That the said sum of $672.52 now in the hands of the said A. A. Partlow, as master, etc., is the property of John Montgomery, and should be paid to some person lawfully appointed to conserve the same for the said John Montgomery.

Fifth. That one-half of the costs of this proceeding should be paid by W. J. Moore and Albert Learnard, and the other half of said costs should be paid out of the said moneys belonging to the said Montgomery."

To which report Montgomery, Moore and Learnard presented to the special master their exceptions as follows:

" That sum of $672.52, found by the said master to be the property of the said John Montgomery at the time of bringing this suit was not all of the property of the said Montgomery, but that $550 thereof were the property of W. J. Moore and Albert Learnard, by virtue of an assignment made before that time by the defendant, John Montgomery.

Second. The evidence does not sustain the finding in clause sixth of the master's report, that W. J. Moore demanded of A. A. Partlow, master in chancery, the said money to the amount of $550, but the evidence does show

that W. J. Moore demanded Montgomery's interest in the proceeds of the sale of the farm, less the costs.

Third. The evidence does not sustain the finding that the master had received notice from Albert Learnard and Joe Phillips that Montgomery was a spendthrift and not capable of managing and caring for his property.

Fourth. The finding in article eight fails to show for or on what account defendants or any of them threatened to sue the master in chancery.

Fifth. The finding in item ninth recites that the master in chancery only retained the money in his hands and refused to pay it over in order to be properly protected in the same; when in truth and in fact no such finding was warranted by the evidence.

Sixth. The finding in item tenth is contrary to the evidence adduced at the trial.

Seventh. The finding at number eleven is not only not supported by the evidence, but is absolutely contradictory in so far as relates to the knowledge on the part of Learnard and Moore of mental unsoundness of Montgomery—the latter part of said clause eleven being a mere argumentative mode of expressing an inference not warranted by the evidence.

Eighth. At number twelfth, the finding that the $475 received by Montgomery from Moore and Learnard has been wasted and squandered by said Montgomery, had no foundation in fact and is not based on any evidence in the case.

Ninth. We insist that as matter of law the said master had no right to file a bill of interpleader herein.

Tenth. As a matter of law the said master was not justified in refusing to pay over the interest of Montgomery in said estate to him because of his supposed incompetency to care for and manage his own estate.

Eleventh. The said master was not, or ought not to be, justified in refusing to pay to Learnard or Moore the interest they claim in the estate of John Le Neve, deceased, by virtue of power of attorney and assignment of interest executed by said Montgomery to said Moore; the evidence showing that the said Montgomery, at the time of the execution of such assignment and power of attorney, was perfectly capable of understanding the transaction. Such finding was unnecessary, for the reason that it was never insisted that the said money be paid to either Moore or Learnard by the said master.

Twelfth. The finding at number fourth, that the sum

of $672.52 in the master's hands is the property of John
Montgomery, and should' be paid to some person lawfully
appointed to conserve the same for said Montgomery, is
contrary to both law and fact, and should have been that
Montgomery's share of the proceeds of the sale of the farm
of said deceased, less costs, be paid to Moore, and the balance
of said sum, less costs, be paid to Montgomery.

Thirteenth.   The law does not justify the master or
court to tax any part of the costs of this proceeding to John
Montgomery, Albert Learnard or W. J. Moore.

Fourteenth.   The conclusion and finding of the master
herein ought to be that the said A. A. Partlow, as master
in chancery, has no right to an interpleader between the
said parties, and that this suit should be dismissed at the
costs of him, the said A. A. Partlow, and that the parties
hereto be left to their remedy at law, and that the injunc-
tion herein be dissolved."

Which exceptions the special master overruled.

The *guardian ad litem*, in behalf of Montgomery, also
presented to the special master exceptions to said report, as
follows:

" First.   Said finding is erroneous in so far as it holds that
any part of the costs should be taxed against Montgomery.

Second.   The evidence does not warrant the conclusion
that any part of the costs should be taxed against Mont-
gomery."

And his exceptions were also overruled by the special
master.

The special master then presented his said report to the
court for approval, and in addition thereto reported that the
evidence had been taken in short-hand.

The *guardian ad litem* for Montgomery, and Mont-
gomery, Moore and Learnard, presented to the court the
same exceptions to said special master's report that they
presented to the special master, and the court overrules the
exceptions presented by Montgomery, Moore and Learnard,
but sustains those of the *guardian ad litem*, and entered a
decree in accordance with the report of the special master,
except that it taxes all the costs to Moore and Learnard,
and allows as costs, $75 to the special master, and $35 to
the *guardian ad litem*.

The appellants, Moore and Learnard, bring the cause to

this court, and urge us to reverse that decree for the following reasons:

That the Circuit Court improperly found and decreed that the bill of interpleader was properly filed; that it improperly found and decreed that the assignment by Montgomery to Moore and Learnard, of his interest in the proceeds of the first sale is void, and conferred no authority upon Moore or Learnard, or both to receive such proceeds or any part thereof from appellee; that it improperly decreed that appellee pay the sum of $672.52, being Montgomery's one-twentieth of the proceeds of said sale, to some person to be appointed conservator for Montgomery; and that it improperly decreed that Moore and Learnard pay the costs in this cause.

Mr. Justice Burroughs delivered the opinion of the court.

The pleadings in this cause, and the proceedings of the Circuit Court, together with the substance of the decree entered by that court, as they appear in the record of this cause, are given in the statement preceding this opinion.

The facts are, that in the partition proceeding of Phillips et al. v. Le Neve et al., heard in the Circuit Court of Vermilion County, a decree was entered finding, among other things, that John Montgomery, one of the parties thereto, owned an individual one-twentieth of the real estate therein described, and ordered appellee, as master in chancery of that county, to sell such real estate, and pay to Montgomery one-twentieth of the proceeds thereof, less one-twentieth of the costs of the partition proceeding.

Appellee, as such master, under that decree sold, July 9, 1898, a part of the real estate for $11,475, and on August 6, 1898, sold the balance for $2,600. On July 16, 1898, John Montgomery sold to appellants, Moore and Learnard, for $475, his interest in the proceeds of the sale made July 9th, and executed a power of attorney to Moore alone, authorizing him, as his attorney in fact, to collect from appellee, as master, the interest of Montgomery in the proceeds of the sale made July 9, 1898.

On September 3d, after appellee had received the pro-

ceeds of the sale made July 9th, Moore presented his power
of attorney, and requested that he pay him the interest of
Montgomery called for thereby, but appellee refused to pay
the same to Moore; then Montgomery, Moore and Learnard
all demanded that he pay the same to either Moore, Learn-
ard or Montgomery, or all of them, and each and all of
them would receipt him in full therefor; and Moore and
Learnard offered to give appellee a good bond to indemnify
him against loss if he would pay them the money, but
appellee insisted that Montgomery was then, and had been
before and since the partition proceeding was instituted, of
unsound mind and body, and was unable to transact his
business or to legally dispose of his interest in the proceeds
of the sale, as he had attempted to do, and refused to pay
him, Moore or Learnard, the money demanded, unless they
would get an order from the Circuit Court that entered the
decree of sale and distribution in the partition proceeding,
directing him to pay it to them.

To this they replied that they would sue appellee on his
official bond, as master, and compel him to pay them one-
twentieth of the proceeds of the first sale, less the costs.

It seems to us it is manifest that the appellants, Moore
and Learnard, do claim from the appellee, the money in
question, arising from the proceeds of the first sale, but that
Montgomery does not, for he insists that it belongs to the
appellants, and offered to give to appellee an acquittance
therefor if he would pay it to them; the only money it is
shown that Montgomery claims from the appellee is his
interest in the proceeds of the second sale, and the appel-
lants make no claim to any of that.

"A bill of interpleader lies when two or more persons
claim the same fund or property by different or separate
interests, and the custodian does not know to whom, of
right, it belongs, and between whom he is wholly indifferent.
Ryan v. Lamson, 153 Ill. 520; Cogswell v. Armstrong et al.,
77 Ill. 139; and New Hall v. Kastens et al., 70 Ill. 156."

The real contention of appellee is that when Montgom-
ery sold to appellants his claim upon appellee, as master, for
the one-twentieth part of the proceeds of the first sale he

was overreached by them, by reason of the fact that Montgomery was then, and had been for some time before, mentally too weak to properly transact his business, and that appellee and appellants had notice of that fact, and having such notice, if appellee paid the money to appellants he might be compelled to pay it again to Montgomery, or his legal representative, upon proof of those facts.

In this we think he is in error, as was the Circuit Court when it entered the decree appealed from. The appellee, as master in chancery, had received the money in question under a decree in which the court had jurisdiction of the parties (which included Montgomery) and the subject-matter, and it had by the same decree ordered the appellee to pay the same to Montgomery, who, by that decree, was considered by the court to be a proper person to pay it to; hence that decree was as much protection to appellee as any other that the court could render.

And besides, appellee, as master, had the custody of the fund merely for the purpose of distributing it as directed by the decree under which he received it, and sustained no such relation to the distributees as compelled or authorized him to see to it that each or any of them were not imposed upon when selling their interests therein, but was only required to see to it that he paid the distributees their respective shares thereof, as ordered by the court, or in case any distributee had sold his share, that the vendor was satisfied to have his share paid to his vendee or vendees.

It would be to unnecessarily burden the distributees of funds which pass through the hands of masters in chancery of this State for the courts to hold that any person could, by giving notice to the master having such fund in his hands, that a distributee entitled thereto under an order of the court by which the master obtained it was weak-minded and unable to give a valid acquittance to the master for his share of such fund, or sell the same to another, and upon receiving such notice the master must hold such share until he can institute some equitable proceeding in court

and have the court pass upon the mental ability of the distributee to give the master a valid acquittance for his share without any corresponding benefit.

The Circuit Court therefore erred when it entered the decree appealed from; and as we are of opinion that no decree can properly be entered for the appellee under the allegations and proofs in this case, we reverse the decree, and remand this cause to the Circuit Court of Vermilion County, with instructions to dismiss the bill with costs to appellee.

Decree reversed and cause remanded, with instructions.